NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| Barbara L. DRAKE,<br><br>    Plaintiff,<br><br>v.<br><br>Jeffrey P. ANDRUCZYK, individually and in his official capacity; Edward K. SPINKS, individually and in his official capacity; BOROUGH OF HIGH BRIDGE POLICE DEPARTMENT; John DOES 1-15,<br><br>    Defendants. | Civ. No. 08-4249<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

### I.   INTRODUCTION

This matter comes before the Court upon Defendants Jeffrey P. Andruczyk, Edward K. Spinks, and Borough of High Bridge Police Department's Motion for Summary Judgment [docket # 22]. Plaintiff Barbara L. Drake opposes the motion and cross-moves for an order permitting her to submit an expert report [26]. The Court has decided the motions after considering the parties' written submissions, without holding oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion is granted in part and denied in part, and Plaintiff's cross-motion is denied.

### II.   BACKGROUND

Plaintiff brings this civil rights claim in connection with her arrest on August 30, 2006, by members of the High Bridge Police Department ("HBPD"). The incident began when Defendant Spinks, the HBPD Police Chief, received a complaint about a pile of brush in the

1

roadway on Sunset Drive in High Bridge, New Jersey.  (Certification of Jay Gebauer, Esq., Ex. C, Spinks Dep. 17:22–19:4) ("Spinks Dep.") [22-4].  Spinks dispatched Patrolman Andruczyk to investigate the pile and issue a written warning to the owner.  (Spinks Dep. 19:9–14.) Andruczyk arrived and found the pile partially on the street in front of the house at 25 Sunset Drive; he went to the front door and rang the doorbell.  (Certification of Jay Gebauer, Esq., Ex. B, Andruczyk Dep. 19:19–23, 20:13–15) ("Andruczyk Dep.") [22-3].  Plaintiff came to the door, but left a screen door between her and Andruczyk closed.  (Andruczyk Dep. 20:25–21:1); (Certification of Beverly Wurth, Esq., Ex. D, Drake Dep. 142:15–1) ("Drake Dep.") [26-5]. Andruczyk explained why he was there and asked if the brush pile was hers; Plaintiff admitted that it was.  (Andruczyk Dep. 21:9–14, 22:17–23); (Drake Dep. 148:7–17).  Andruczyk then informed Plaintiff that the brush pile was in violation of a High Bridge Borough Ordinance. (Andruczyk Dep. 23:10–17); (Drake Dep. 148:7–17).  All parties agree that the Ordinance provides that the resident responsible for the brush pile has ten days to remedy the problem before the resident is in violation of the ordinance and subject to penalties.  (HB Code Book, § 230, Wurth Certification Ex. L) [26-13].  Therefore, Andruczyk could only issue Plaintiff a warning regarding the brush pile.  (*Id.*)

At this point the parties' stories differ.  According to Andruczyk, he told Plaintiff that he was going to issue the written warning, and he asked for identification so that he could fill out the warning notice.  (Andruczyk Dep. 23:10–17, 24:20–23.)  Believing she was not going to cooperate and that he might need to arrest her, Andruczyk asked if he could come inside, and Plaintiff said, "Come in," and opened the door for him.  (*Id*. at 25:14–20, 28:20–24.)  Inside, Andruczyk again explained why he was there, but Plaintiff became irate and walked down a hallway into the kitchen, saying, "I'm going to call my attorney."  (*Id*. at 30:24–31:15.) Andruczyk followed her into the kitchen, told her to stop, and grabbed her left arm.  (*Id*. at

2

31:12–25.) At that point, Andruczyk decided to arrest Plaintiff for failing to provide identification and for obstructing performance of his duties. (*Id*. at 32:5–12.) He attempted to handcuff her, and she resisted. (*Id*. at 41:10–12.) Even after he secured one handcuff, she continued to pull away, and in so doing, stumbled and hit her head on a kitchen cabinet. (*Id*. at 41:19–43:15.) Andruczyk finished handcuffing her and took her outside to his patrol car. (*Id*. at 43:22–44:14.) Chief Spinks arrived after Andruczyk brought Plaintiff outside, and Plaintiff was then transported back to the HBPD headquarters where she was processed. (*Id*.) She refused medical treatment. (*Id*.)

  Plaintiff's version of the events differs significantly. According to Plaintiff, when Andruczyk came to her door and told her the brush pile was in violation of a Borough ordinance, she told Andruczyk that her landscaper had left the pile but that it would be removed the next day. (Drake Dep. 152:1–20.) When Andruczyk reiterated that it was against the Ordinance, Plaintiff asked if he was going to give her a summons. In response, Andruczyk said, "Are you refusing to move this [pile]?" and then demanded that she open the screen door. (*Id*. at 152:10–22.) Plaintiff claims that Andruczyk then began pulling on the screen door hard enough that he damaged it. (*Id*. at 152:23–153:1.) Plaintiff opened the screen door for him because she was afraid and did not want him to break it. (*Id*. at 170:25–171:5.) Andruczyk then entered without permission and asked if Plaintiff was alone or if there was anyone upstairs, to which she replied that only her dog was there. (*Id*. at 175:5–14.) Andruczyk then ordered her into the kitchen and asked for her driver's license, registration, and proof of insurance. (*Id*. at 178:24–179:14, 181:1–5.) Plaintiff responded that her registration and insurance were in her car in the garage, and Andruczyk told her to go get them; he stayed in the kitchen while she retrieved the items. (*Id*. at 181:1–15.) When Plaintiff returned with the registration and insurance, Andruczyk again demanded that she produce her license. (*Id*. at 184:4–15.) Plaintiff refused to get her license

3

because she believed that if she went upstairs to where her license was located, Andruczyk would try to rape her. (*Id*. at 184:18–185:4.) When Andruczyk again demanded the license and Plaintiff again refused, he threatened to place her under arrest for refusing to provide documentation. (*Id*. at 186:10–11, 187:9–10.) Plaintiff asked for an attorney and told Andruczyk he was frightening her and not acting like a policeman. (*Id*. at 185:19, 187:21–24.) Andruczyk then pulled out plastic handcuffs and reached for Plaintiff's wrist. (*Id*. at 188:23–189:22.) Not believing he was a police officer, Plaintiff backed away from him. (*Id*. at 190:11–20.) He advanced on her and grabbed her wrist, and Plaintiff struggled to get away, believing she was fighting for her life. (*Id*. at 194:6–8, 195:7–196:12.) Andruczyk then spun her around, kneed her in the back, and repeatedly slammed her head into the cabinets and a cutting board on the kitchen counter. (*Id*. at 197:15–23, 200:1–13.) He then handcuffed her hands behind her back and took her out into the front yard. (*Id*. at 201:23–25, 205:8–17, 206:1–17, 207:2–8.) Andruczyk called headquarters from the front porch, and Chief Spinks arrived. (*Id*. at 207:2–8, 210:8–13.) Plaintiff was then put in the patrol car and taken to the HBPD station. (*Id*. at 210:8, 213:12–14.) She admits she refused medical treatment at the station because she did not want anyone touching her. (*Id*. at 214:4–15.)

      As a result of this incident, Plaintiff was charged with violation of the brush pile ordinance, obstructing an officer from his lawful duty, and resisting arrest. At trial in North Hunterdon Municipal Court, she was found not guilty of the brush ordinance violation and of obstructing an officer. (Wurth Certification Ex. A, Tr. of N. Hunterdon Mun. Ct. 169:5–13) [26-2]. On appeal, she was found not guilty of resisting arrest as well because the state had not proved beyond a reasonable doubt that Plaintiff knew or had reason to know that Andruczyk was a police officer. (Wurth Certification Ex. B, Tr. of N.J. Super. Ct. 11:11–18, 13:20–25) [26-3]. An internal affairs investigation conducted by the HBPD concluded that Andruczyk "followed

4

the appropriate department policies and procedures and acted within performance guidelines." (Wurth Certification Ex. P, Spinks Letter to Drake 1) [26-17].

Plaintiff filed the Complaint in this case on August 22, 2008 [1]. She asserts several claims against Andruczyk, including unlawful search of her residence, assault and battery and use of excessive force, false arrest, malicious prosecution, and abuse of process. Plaintiff claims the other Defendants were either directly involved or are liable for failing to properly train and supervise Andruczyk and failing to prevent or stop his wrongdoing. She brings her claims under 42 U.S.C. §§ 1983 and 1988, the New Jersey State Constitution, and New Jersey State Law.

Defendants now seek summary judgment on a number of issues. First, they argue that Plaintiff's claims for false arrest, excessive force, and failure to train and supervise must be dismissed because Plaintiff has not produced an expert to testify about proper police conduct. Second, Defendants want the claims against HBPD and the claims against the officers in their official capacities dismissed. Third, they contend that the evidence is insufficient to support the claims against HBPD and Spinks for failure to train. Fourth, they argue that the evidence cannot support the claims for failure to supervise or for maintaining improper procedures. Fifth, they maintain that punitive damages are barred by New Jersey's Tort Claims Act. Finally, they assert that Plaintiff has failed to state a claim for negligent infliction of emotional distress.

### III. LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Id*.; *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). In

5

resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More specifically, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). More than a mere "scintilla of evidence" supporting the non-moving party is required. *Anderson*, 477 U.S. at 252. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Celotex*, 477 U.S. at 323–24.

## IV. ANALYSIS

### A. Expert Testimony on Proper Police Conduct

In their motion, the Defendants argue that all claims against Andruczyk, Spinks, and HBPD must be dismissed because Plaintiff has failed to produce an expert who can testify that the HBPD policies and procedures were defective or that Andruczyk deviated from them.[1] Plaintiff counters that the flaw in the HBPD policies is that they provide no guidance to an officer on the proper use of force in a situation where the officer is mandated to issue a warning only and that no expert is needed to prove this point. (Opp'n Br. 37.) Alternatively, Plaintiff cross-moves for an extension of time to submit an expert report.

---

[1] In their reply brief, Defendants concede that an expert is not needed to support the claim for excessive force, and they appear to cabin their argument to Plaintiff's claims for failure to train or supervise. (Reply Br. 2.) We nevertheless proceed to consider this issue because the motion requests dismissal of all claims and because the cross-motion's request for an expert is not limited to any particular claims.

We have found no cases indicating that expert testimony is required to prove a claim for failure to train or supervise. Although some courts recognize that "expert testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of a municipality's training procedures," *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992) (cited in *Nicini v. Morra*, 212 F.3d 798, 817 (3d Cir. 2000)), we cannot say that the absence of such testimony leaves Plaintiff's claim so lacking in support that Defendants must prevail as a matter of law. Therefore, we will not dismiss any of the claims on this basis.

Regarding the cross-motion, Plaintiff's counsel argues that, due to difficulties registering this case for electronic filing, she did not receive e-mail notice of the scheduling order setting a deadline for producing an expert until after the deadline had passed. Defendants oppose the cross-motion on the grounds that Plaintiff's counsel was present for the court conference when the deadline was initially set and therefore had notice of the deadline even without e-mail notification. Furthermore, Defendants' argue, even after Plaintiff's counsel received the order, she did not file a motion for an extension, and only does so now in response to the motion for summary judgment.

Given our finding that expert testimony is not essential to Plaintiff's surviving claims, we decline to extend the deadline for Plaintiff to submit an expert report.

### B. Section 1983 Claims Against HBPD and Spinks

Plaintiff asserts several claims against HBPD and Spinks under § 1983. The Defendants insist that these claims must be dismissed because they are based on an impermissible theory of vicarious liability.

Municipalities are "persons" under § 1983, but they cannot be liable under § 1983 solely on a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690–91 (1978). Rather, a municipality may be held liable only when execution of a policy or

custom caused the violation of federal law. *Id.* at 694. And in New Jersey, a municipality's police department is not a separate entity from the municipality. *See* N.J.S.A. 40A:14-118 (stating that New Jersey police departments are "an executive and enforcement function of municipal government."); *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). Therefore, HBPD cannot be liable for any of Andruczyk's alleged violations unless those violations are a result of a policy or custom established by the police department.

Similarly, HBPD and Spinks, as supervisors, cannot be held vicariously liable under § 1983 for the actions of their subordinate, Andruczyk. *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). Rather, supervisors must be personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two theories of liability under which supervisors can be held liable: (1) if, with deliberate indifference, a supervisor established and maintained a policy or custom that caused the harm, and (2) if a supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[] in charge, had knowledge of and acquiesced in [the] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citations omitted).

    1. Failure to Train

Plaintiff alleges that Andruczyk "has not received any training on the use of force in situations where only a warning can be issued" or where the officer only needs the homeowner's name. (Opp'n Br. 39); (Compl. 13, Count Four) [1]. Generally, to hold a municipality liable under the "policy or custom theory," a plaintiff must first identify either a "policy, statement, ordinance regulation or decision officially adopted and promulgated by" the municipality, or "constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the [municipality's] official decision making

8

channels." *Monell*, 436 U.S. at 690–91. However, the Supreme Court recently stated that, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, --- S.Ct. ----, 2011 WL 1119022, at *7 (U.S. Mar. 29, 2011). [2] Although a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," a plaintiff can still recover if she can show that the failure amounted to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). Thus, a plaintiff must show that the "policymakers [were] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* (citing *Bryan Cnty.*, 520 U.S. at 407); *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (stating that claim for failure to train requires showing of "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances"). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 2011 WL 1119022, at *7.

We find that the claims against HBPD and Spinks for failure to train must be dismissed because Plaintiff has put forward no evidence to demonstrate that the department was on notice

---

[2] Plaintiff appears to allege both that HBPD and Spinks maintained an unlawful policy or custom and that they failed to properly train their officers. However, Plaintiff never identifies what the allegedly unlawful policy or custom is. Plaintiff's real grievance is with the absence of a policy on the use of force in situations such as the one in which Andruczyk found himself. Therefore, we analyze her claims under the failure to train and failure to supervise theories.

9

that its training program was insufficient and likely to lead to a violation of constitutional rights. Plaintiff's allegation is that HBPD failed to train its officers on the proper use of force in a situation where the officer is mandated to issue a warning only. (Opp'n Br. 37.) However, Plaintiff has not shown that HBPD was either aware that its training program was lacking in this respect or that Andruczyk's alleged violation was an "obvious" consequence of not providing the additional training. She has identified no other similar incidents; instead, she points to a single alleged violation that she claims could have been cured by additional training. Although a single constitutional violation may provide a basis for liability where the violation was the "obvious consequence" of a failure to train, this single-incident theory applies only "in a narrow range of circumstances" as an exception to the principle that "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 2011 WL 1119022, at *7 (quoting *Bryan Cnty.*, 520 U.S. at 409). We find that the single incident in this case, assuming it was indeed a violation attributable , was not so obvious that it would put the Defendants on notice of the need for additional training. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060 (3d Cir. 1991) (stating that a "failure to train is not established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct"). Therefore, we will dismiss Count Four.

    2.  Failure to Supervise

Count Five of the Complaint alleges that HBPD and Spinks failed to properly supervise the HBPD officers, including Andruczyk. The Third Circuit has held that "deliberate indifference" in the failure to supervise context requires a showing of both (1) "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents," and

(2) "circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (stating that failure to train "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations"). Thus, like the claim for failure to train, a claim for failure to supervise requires a showing that the supervisors were on notice—either actual or based on a prior pattern—that their allegedly inadequate supervision might lead to a constitutional violation. *See Christopher v. Nestlerode*, 240 F. App'x 481, 489 n.6 (3d Cir. 2007) (applying same deliberate indifference standard to failure to train and failure to supervise claims).

Here, Plaintiff's claim must fail because there is no evidence that Defendants had such notice. Plaintiff certainly has not presented evidence of a prior pattern of similar incidents that would put the Defendants on notice of the need for heightened supervision. To the contrary, Andruczyk's deposition suggests that he has been dispatched to issue warnings in similar situations (for inoperable vehicles on private property) approximately 100 times without incident, (Andruczyk Dep. 13:18–18:1) and that he had never before been the subject of an internal affairs investigation, (*id.* 61:1–18.) Moreover, nothing suggests that other HBPD officers have been involved in similar incidents. Essentially, Plaintiff's claim is that the need for supervision was so obvious that the Defendants were on notice even without any prior incidents. *See Nestlerode*, 240 F. App'x at 489–90 (stating that single constitutional violation may provide basis for municipal liability, but only where need for more training or supervision is "so obvious and the inadequacy so likely to result in the violation of constitutional rights" that municipality's inaction amounts to deliberate indifference). We disagree. Even if it were clear that the Defendants were derelict in their supervision of Andruczyk on this one occasion, the evidence is

11

still insufficient to create a triable issue on the obviousness of the lack of supervision. Accordingly, we will dismiss Count Five of the Complaint.

### 3.  New Jersey Civil Rights Claims

The New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*, is a state law analogue to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured by the Constitution and laws of the state of New Jersey and the Constitution and laws of the United States. Accordingly, NJCRA is generally interpreted to be coextensive with its federal counterpart. *See Jefferson v. Twp. of Medford*, 2010 WL 5253296, at *13 (D.N.J. Dec. 16, 2010); *Celestine v. Foley*, 2010 WL 5186145, at *6 (D.N.J. Dec. 14, 2010); *Chapman v. New Jersey,* 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009); *Slinger v. New Jersey,* 2008 WL 4126181, at *5 (D.N.J. Sept. 4, 2008), *rev'd in part on other grounds*, 366 F. App'x 357 (3d Cir. 2010).

The Court has already found that the claims against Spinks and HBPD based on failure to train or supervise under § 1983 must be dismissed. Thus, to the extent these claims are also made under the NJCRA, they must also be dismissed.

### C.  Direct Claims Against Spinks

Counts One and Two of the Complaint allege that Spinks is liable directly, as opposed to vicariously, for participating in, directing, or failing to prevent or stop Andruczyk's unlawful search of Plaintiff's residence and his use of excessive force on and false arrest of Plaintiff. However, under both Plaintiff's and Andruczyk's versions of the story, Spinks first dispatched Andruczyk to investigate the pile of brush and then arrived on the scene once Plaintiff was already in custody; he was not present for the entry, the use of force, or the arrest, nor is there evidence that he directed Andruczyk to do any of these things. Therefore, he cannot be said to have been directly involved. To the extent that these claims are brought under § 1983 or the

New Jersey Civil Rights Act, we will dismiss them because any liability would be premised solely on a theory of respondeat superior.[3]

### D. Punitive Damages Under the Tort Claims Act

Both parties agree that, under the New Jersey Tort Claims Act, "[n]o punitive or exemplary damages shall be awarded against a public entity." N.J.S.A. 59:9-2(c). Thus, any claim for punitive damages against HBPD or against the officers in their official capacity must be dismissed. *See R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188, 203 (D.N.J. 2008). However, the individual officers may be liable for punitive damages in their individual capacity, and those claims may therefore proceed. *See Ramirez v. United States*, 998 F. Supp. 425, 438 (D.N.J. 1998). We therefore deny Defendants' request for summary judgment on this point.

### E. Negligent Infliction of Emotional Distress

Plaintiff asserts a claim for negligent infliction of emotional distress ("NIED"). The direct tort of NIED, as opposed to one based on bystander liability, is "understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1128 (N.J. 1989). To succeed, Plaintiff must prove the following: (1) "a duty of reasonable care" was owed by the defendant to the plaintiff, (2) that duty was breached, (3) the "plaintiff suffered severe emotional distress," and (4) the breach proximately caused Plaintiff's injury. *Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003). Plaintiff has put forward enough evidence on each of these elements to create a triable issue as to whether the defendants are liable for NIED. Accordingly, we will deny summary judgment on this claim.

---

[3] In Count Nine, Plaintiff seeks to hold Spinks liable for false arrest under New Jersey state law. This claim survives because, unlike § 1983 liability, New Jersey tort law "permits false arrest and imprisonment actions against municipalities under the respondeat superior theory so long as the municipal employee was acting in the scope of employment and without 'willful misconduct.'" *Adams v. City of Camden*, 461 F. Supp. 2d 263, 270 (D.N.J. 2006) (citing N.J.S.A 59:2-2a, 59:2-10).

V.  CONCLUSION

For the reasons set forth above, IT IS on this 13th day of April, 2011,

ORDERED that Defendants Jeffrey P. Andruczyk, Edward K. Spinks, and Borough of High Bridge Police Department's Motion for Summary Judgment [docket # 22] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that Plaintiff Barbara L. Drake's Cross-Motion permitting her to submit an expert report [docket # 26] is DENIED; and it is

ORDERED that Counts One and Two are DISMISSED as against Defendant Edward K. Spinks; and it is

ORDERED that Counts Four, Five, and Six are DISMISSED as against Defendants High Bridge Police Department and Edward K. Spinks.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.